## JOSEPH B. FOSSELMAN
## v.
## THE CITY OF SPRINGFIELD.

*Municipal Corporations—Prosecutions before Justice of the Peace by City—When City Liable for Costs.*

Where a city institutes and prosecutes to judgment before a justice of the peace, suits for the violation of municipal ordinances, and fines are imposed and judgments rendered for the same and costs, and executions are issued, under which the defendants, they being without property, are committed to the city prison and the fines worked out under the provisions of the municipal ordinances, the city is not liable to the justice in an action of assumpsit for money had and received for his costs which were included in such judgments, and which were discharged by labor for the city.

[Opinion filed November 21, 1890.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. GROSS & BROADWELL, for appellant.

Messrs. PATTON & HAMILTON and TIMOTHY McGRATH, for appellee.

WALL, J.  Joseph B. Fosselman was a justice of the peace in the city of Springfield, duly elected and qualified for eight years, his first term beginning April, 1881.  In May, 1882, the city of Springfield became incorporated under the general incorporation law, since which time it has exercised its corporate powers thereunder.  The city instituted and prosecuted to judgment, before Justice Fosselman, within the five years prior to the bringing of this suit, 283 suits—misdemeanors, all of them, for violations of the city's ordinances.  In each of the cases a fine was imposed, and a judgment rendered in favor of the city and against the respective defendants for the amount thereof and for costs, on which an execution was at

Fosselman v. City of Springfield.

once issued by Justice Fosselman. These executions were, by the justice, placed in the hands of policemen—administrative agents of the city—to execute. The executions were directed to the sheriff, etc., " or any police of the city," and recited that, whereas the city had obtained before Justice Fosselman, a judgment against (the defendant), for violation of an ordinance of the city, for $—, with costs, the officer was commanded to levy said debt and costs on the goods and chattels of the defendant within the city, and for want of sufficient property, etc., the command was, that the body of the defendant be taken into custody and conveyed to the city prison keeper, to be safely kept by the latter until he pay the debt and costs, or serve the same out in such manner and time as prescribed by the ordinances of the city, and to make return thereof, stating how the same had been executed. The ordinances of the city, then in force, provided that upon the commitment of any person by order of any justice of the peace, etc., for non-payment of any fine, etc., adjudged against him, and such person not having goods and chattels out of which the judgment and execution could be collected, the police officer having the execution should deliver the defendant (along with the execution showing fine, etc., and costs adjudged against him) to the city prison keeper, which latter officer was required to make entry of the date and amount of the fine and costs, and the number of days the defendant would have to be confined to discharge the same, at fifty cents a day. The city prison keeper was, by the ordinances, authorized to require the person so committed to his custody to perform manual labor, within or without the prison, for not more than ten hours each working day, as the prison keeper might direct; and he was further authorized to deliver the defendant (with the execution showing the fine and costs) to the city superintendent of streets, and this officer was required to compel the defendant to labor on the streets, etc., of the city for ten hours each working day, and for each day's labor to credit the defendant at the rate of not less than fifty cents and not more than $1.50, and when the defendant had labored out his fine and costs, to discharge him.

In each of the 283 cases shown in this record, the defendants were taken under the executions aforesaid, and committed to the custody of the city prison keeper, as provided in the city's ordinances; and in each of the cases the executions were returned into the justice's court of the plaintiff, with a written return thereon, signed by the officer of the city holding the same for execution, showing the manner in which it had been executed. In two of the cases, namely, Nos. 937 and 978, the return on the execution was, "Ex'n ret'd unsatisfied; by order of Chief of Police Maloney;" in six of the cases, namely, Nos. 1062, 1332, 1487, 1719 and 2147, the returns on the executions show the discharge of the defendant, and the execution unsatisfied, "by order of the mayor;" while in the 275 remaining cases, the return shows that the same were "satisfied by labor and imprisonment." Aside from the returns upon the executions as aforesaid, which are not disputed, the uncontradicted testimony of the plaintiff is, that the defendants in 275 cases referred to, satisfied the executions against them under the provisions of the city's ordinances, by labor bestowed upon the streets and alleys of the city, under the supervision and control of the agents of the city.

Included in each of the judgments rendered by the plaintiff in each of the 283 cases, were the legal fees of the plaintiff as justice of the peace, allowed by the statutes of the State, the amount of such fees in each particular case being shown in the plaintiff's bill of particulars, and aggregating $539.15, the legality and amount of which is not questioned; and it is also not questioned or denied that no part of these fees has been paid to the plaintiff. In June, 1889, and after the plaintiff's term of office had expired, he presented his account against the city, and demanded of the city payment of his fees in the 283 cases, which was by the city refused. Thereupon the appellant sued the city in assumpsit, declaring upon the common counts, as for money had and received; and by his bill of particulars and at the trial, claimed that the city, by its action, in virtue of its ordinances, in receiving and entering satisfaction of the several judgments, in which

Fosselman v. City of Springfield.

judgments were included the statutory fees of appellant as justice of the peace, in the manner shown by the testimony, became and was liable to the appellant for the amount of his said fees. The ordinances introduced by appellant were adopted by the city after its organization under the general law; while those introduced by appellee were adopted while the city was acting under its old special charter. Upon the trial, which was by the court and without a jury, appellant asked the court to make special findings of fact, contending, that as the judge sat as a trier of facts in the place, and perform.-ing the functions of a jury, the statute in relation to verdicts of juries in civil cases applied. But the court refused. Appellant also submitted to the court a number of propositions, to be held as law, all of which the court refused, and found the issues, generally, for the appellee.

A motion for a new trial was interposed by appellant, which was denied and judgment entered for appellee.

The question is whether the city is liable to pay the fees of the justice of the peace in cases where the defendants discharged their fines and cost by imprisonment and street labor and in those cases where, by order of the city, the execution was returned unsatisfied or the defendant by like order was released from imprisonment. There would seem to be no room for discussion as to the two latter classes, as it does not appear that the city recovered anything actually or constructively in either of such cases or that there was any breach of duty or misfeasance upon which to predicate liability. The chief claim is as to the cases where the defendants, having been convicted, were found to possess no property out of which the fine and cost could be made, and in pursuance of the ordinance enacted under the authority of the statute were committed to the city prison and required to perform street labor at the fixed rate per diem until the fines and costs were thereby discharged. The city is an agency of the State for the purpose of administering local government and the enforcement of its ordinances partakes of the nature of criminal prosecutions. The proceeding may be in the form of an ordinary action of debt or it may begin by a warrant for arrest issued upon

the affidavit of any person that an ordinance has been violated and that the affiant has reasonable grounds to believe the party charged is guilty. The person arrested shall, without delay, be taken before the proper officer and tried for the offense. Any person upon whom a fine is imposed may, by the order of the court, be committed to prison until the fine and cost be paid. The city council is empowered to provide by ordinance that persons so committed shall be required to work at such labor as their strength will permit within and without such prison, etc. Chap. 24, Par. 278, S. & C. Ill. Stats., 522. Such proceedings are usually termed quasi criminal; and while it would be competent for the State to provide that by its instrumentality the city should pay costs in such cases, yet it is entirely competent to provide otherwise. The State representing sovereignty, may prosecute all suits necessary to enforce its authority without cost or other restrictions, unless imposed by the organic law or by statute, and it may permit its local agencies to enjoy like exemptions. Holmes v. The City of Mattoon, 111 Ill. 27. The matter of taxing cost is regulated by the statute as to all civil as well as criminal proceedings. We find no provision expressly or by implication rendering a city liable for costs incurred in such prosecutions. Section 40, Ch. 53, in relation to fees and salaries, among other things provides " that the costs in criminal and quasi criminal prosecutions for the violation of an ordinance of an incorporated city or town, where the provisions of the charters of such towns or cities do not prohibit the payment of such costs, may be paid by such city or town, in the discretion of the city council or board of trustees." * * * This clearly places the whole subject within the discretion of the city and requires affirmative action of the city before it can be made liable. Town of Nokomis v. Harper, 31 Ill. App. 107. The propriety of such provision will be apparent when it is remembered how such prosecutions may be initiated and how easy it would be to drain the municipal treasury but for the power of restriction here indicated.

So far as disclosed by the record, the city took no action looking to the payment of such costs, but, on the contrary,

provided against liability therefor.   Its ordinances upon this point were passed in 1865, while under a special charter, and in 1882, after adopting the general law charter.   The former ordinance, not being inconsistent, etc., remained in force until the latter, covering the same ground, was passed.   Sec. 11, Art. 1, Ch. 24, R. S.

We do not understand that it is contended the city is on the same footing in this respect as ordinary litigants, but that the appellant's position is based wholly upon the proposition that there has been a satisfaction of the fine and cost, the benefit of which has inured to the city, and that by virtue of the labor upon the streets the city has received money's worth on account of the fees in question, and that *ex equo et bono* it should pay the amount in money to the justice, in analogy to the case of De Witt v. The City of Chicago, 26 Ill. 443. There the city had received the fees in money, and it was perfectly clear that *ex equo et bono* it should pay over to the officer whose earnings they were.   But where is the analogy between that case and this?   The present action is assumpsit, for money had and received by the defendant for the use of the plaintiff.   It is conceded, of course, that there was no express assumpsit, and so reliance must be had upon an implied assumpsit, which is an undertaking presumed in law to have been made by a party from his conduct, though he has made no express promise; the presumption being that he has assumed to do what is in point of law just and right.   1 Bouv. Law Dic. 135.   The count for money had and received may in general be proved by any legal evidence showing that the defendant has received or obtained the money of the plaintiff, which in equity and good conscience he ought not to retain. The subject must originally have been money, or that which the parties have agreed to treat as money.   2 Gr. Ev., Sec. 117.   The count is likened in its spirit and objects to a bill in equity, and recovery is uniformly based upon the fact that defendant has the money of plaintiff, and that *ex equo et bono* he ought to pay it over.

Recurring to the facts in the case at bar, it is clear and conceded that the city has no money belonging to the plaintiff,

and we think it equally clear that it has nothing in its posses-
sion which the parties ever agreed to treat as money; nor is
it equitable that what the city received from the convicted
offenders in the way of imprisonment or street labor should
be transmuted to money and given to the plaintiff. The stat-
ute authorizing the imprisonment and enforced labor, in case
of non-payment of fines imposed under the ordinances of a
city, was designed for the punishment of those offenders
whose want of tangible property would otherwise place them
beyond the reach of city discipline. As a mode of punish-
ment it becomes efficient when no estate of the defendant can
be found, and it is to be regarded merely as an alternative
mode of punishment. But for such provision the prosecu-
tion of a large class of offenders would be purely farcical and
would fall into disuse, so that such persons might violate the
ordinances with impunity. But in order to inflict such pun-
ishment the city must, at no little cost, provide special facili-
ties for imprisonment and for the employment, under super-
vision, of the convicted offenders. No profit can be realized
from labor obtained under such conditions, and it would
hardly be worth its cost ordinarily, but the system is a neces-
sary one because it is the only available method of suppress-
ing such offenders. It would be impossible to ascertain and
state how much the labor of certain individuals so held is
really worth to the city—no attempt is made to do so in this
instance—and so if the city is liable in respect to the item at
al¹, it is assumed that the work is worth whatever is under
the ordinance allowable therefor. Manifestly this would be
unjust, since thereby the city would, beyond all question, be
required to pay for more than it received, and it is wholly
uncertain whether, all expense considered, the city has really
received any benefit whatever. The city has not received the
plaintiff's money; it has done nothing from which the law
will imply a promise on the ground that it will be presumed
to assume what is just and right in point of law. It has done
nothing to the injury of plaintiff. The convicted parties had
no property, and therefore the fine and fees could not be col-
lected. They were then to go free unless the city chose to

adopt the alternative mode of punishment. In order to enforce its authority and preserve the public peace it must resort to this other mode, and in so doing it does not impliedly undertake to pay the fees of the officer, although it is true that the term of punishment is measured by the sum total of the fine and cost. We are of opinion that the judgment of the Circuit Court was correct.

It is also insisted by appellant that the court erred in refusing to answer specifically certain interrogatories as to the facts. The act of 1887 providing for the submission of such questions is, by its terms, applicable only to trials by jury and clearly not where the trial is by the court, a jury being waived.

Certain propositions of law were tendered to the court and were marked refused. They are not discussed in the brief of appellant and we assume the points they involve are embraced in the main question of liability upon the undisputed facts. The judgment will be affirmed.

*Judgment affirmed.*